## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PAULA RUSH                        *
                                  *
          v.                      *        Civil Action WMN-07-CV-0854
                                  *
AMERICAN HOME MORTGAGE, INC.      *
et al.                            *

     *    *    *    *    *    *    *    *    *    *    *    *

### MEMORANDUM

     Before the Court is Defendants American Home Mortgage

Corp., D/B/A American Brokers Conduit, and AHM SV, Inc.'s

(together "AHM Defendants") Motion to Dismiss.[1]  Paper No. 20.

This case was filed on April 3, 2007, against Defendants

American Home Mortgage, Inc., American Home Mortgage Servicing

Inc., American Brokers Conduit, Trust Appraisers, and

Servicelink alleging various claims relating to Plaintiff's

Mortgage Refinance to a "MTA Pay Option ARM."  The AHM

Defendants filed the motion to dismiss at issue here on July 31,

2007.  Paper No. 20.  Plaintiff filed her Opposition on August

17, 2007.  Paper No. 27.  Subsequently, the case was stayed as

to the AHM Defendants on August 8, 2007, due to their filing

bankruptcy under Chapter 11.  Paper No. 23.

---

[1] Plaintiff incorrectly identified American Brokers Conduit as a
separate Defendant.  In fact, American Brokers Conduit is the
D/B/A of American Home Mortgage and thus, the same Defendant.
In addition, the name of Defendant American Home Servicing, Inc.
has changed to AHM SV, Inc. since the filing of this Complaint
and AHM SV, Inc. has thus replaced American Home Servicing, Inc.
as the correct Defendant.

Following the stay against the AHM Defendants, the case was dismissed without prejudice as to Defendants Trust Appraisers and Servicelink due to a lack of subject matter jurisdiction over those Defendants.  Paper Nos. 32 & 33.  Within the same dismissal order, the Court administratively closed this action as there were no remaining Defendants against whom the case could proceed.[2]  Paper No. 33.

On August 19, 2009, the Court granted Plaintiff's motion to reopen the administratively closed case against the AHM Defendants, but denied her motions to amend her Complaint and

---

[2] Plaintiff requested in her Motion to Dismiss that the Court enter default judgment against The Loan Corporation.  It is unclear, however, whether the Loan Corporation was properly named as a Defendant, and, if so, whether they were properly served.  The Loan Corporation never entered an appearance nor filed a responsive pleading to Plaintiff's Complaint, although its representative allegedly told Plaintiff that they had not been properly served or named in the Complaint.  Plaintiff served the Summons and Complaint on "American Brokers Conduit; The Loan Corporation" at The Loan Corporation's address.  Thus, The Loan Corporation, which is not owned or affiliated with American Brokers Conduit, allegedly stated that Plaintiff had not served The Loan Corporation, but had improperly served American Brokers Conduit at The Loan Corporation's address.  In Plaintiff's Opposition to AHM Defendants' Motion to Dismiss, Plaintiff asked the court for default judgment against The Loan Corporation and stated that they brokered the loan through some affiliation with American Brokers Conduit.  Subsequent to Plaintiff's filing, this case was administratively closed and the issue was never addressed.  When Plaintiff filed her motion to reopen the case, she alleged that The Loan Corporation had gone out of business and the Court reopened the case only as to the AHM Defendants.  Thus, as The Loan Corporation is no longer a Defendant and Plaintiff has not moved for its addition, Plaintiff's request for default judgment will be denied without prejudice.

add new parties.  Paper No. 43.  Subsequently, the AHM

Defendants filed their Reply to Plaintiff's Opposition and this

motion is now ripe.  As Plaintiff's various motions to amend her

Complaint have all been denied, this Motion is based only upon

claims and allegations contained in Plaintiff's original

Complaint and her Opposition to the Motion and not on any

allegations contained in any of her proposed amended complaints.

Upon review of the pleadings and the applicable case law,

the Court determines that no hearing is necessary (Local Rule

105.6) and that the Motion to Dismiss will be granted in part

and denied in part as set forth below.

## I.   BACKGROUND

On April 3, 2006, Plaintiff Paula Rush refinanced her

existing home loan and entered into a MTA Pay Option ARM loan

agreement with American Home Mortgage Corp. ("AHMC") d/b/a

American Brokers Conduit ("ABC").  Compl. ¶ 5.  Plaintiff's MTA

Pay Option ARM loan ("the loan") has a variable rate feature

with payment caps.  Plaintiff alleges that she was told that she

was receiving a loan with a 1% interest rate for 480 months.

Compl. ¶ 21.  Instead, however, the loan possessed a low, fixed

payment for a certain period of time, but not a low, fixed

interest rate.  Id. ¶ 66.  Plaintiff claims that she received

the low interest rate for only one month after which Defendants

increased the interest rate that they charged, albeit not her monthly payment.  Id. ¶ 37.

Plaintiff alleges that her belief regarding the interest rate stemmed first from the misleading advertisements sent out by Defendants.  She alleges that she received a direct mail flyer for a MTA Pay Option Arm that stated that she was pre-qualified for a 1% interest rate due to her good credit standing and equity in her home.  Id. ¶ 11.

Plaintiff also alleges that her belief that she was purchasing a mortgage with a 1% interest rate stemmed from confusing loan disclosures that changed from when she first submitted her application to when she closed on the loan. Moreover, she alleges that she did not timely receive the disclosures within the mandates of the Truth-in-Lending Act. She claims that the disclosures relating to interest rate, the APR, and the use of the term conventional to describe the type of loan that she had were misleading and led her to believe she was applying for a mortgage with a 1% interest rate.  Plaintiff also claims that the initial disclosures misled her into believing that her loan would not be subject to a prepayment penalty.  Finally, Plaintiff claims that the disclosures failed to point out that negative amortization would occur.

Based upon these allegations, Plaintiff raises twelve counts: 1) Violations of the Truth-in-Lending Act (TILA) Prior

to Closing; 2) Servicing Mortgage Loans Without Mandatory TILA

Disclosures Subsequent to Closing; 3) False Advertising; 4)

Fraud and Deceptive Acts; 5) Racketeer Influenced and Corrupt

Organizations Act (RICO); 6)Negligence; 7) Breach of Express

Warranty; 8) Breach of Fiduciary Duty; 9) Unjust

Enrichment/Restitution; 10) Breach of Contract; 11) Breach of

Fiduciary Duty; and 12) Duress and Economic Duress.

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint

must contain sufficient factual matter, . . . , to 'state a

claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial

plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Iqbal, 129 S.

Ct. at 1949 (citing Twombly, 550 U.S. at 556).  "Detailed

factual allegations" are not required, but allegations must be

more than "labels and conclusions," or "a formulaic recitation

of the elements of a cause of action[.]" Iqbal, 129 S. Ct. at

1949 (quoting Twombly, 550 U.S. at 555). "[O]nce a claim has

been stated adequately," however, "it may be supported by

showing any set of facts consistent with the allegations in the

complaint." Twombly, 550 U.S. at 563.  In considering such a

motion, the court is required to accept as true all well-pled allegations in the complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) (citing Little v. Federal Bureau of Investigation, 1F.3d 255, 256 (4th Cir. 1993).

## III. DISCUSSION

### A.   Judicial Notice and Consideration of Documents and Facts Raised Outside the Complaint

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court generally may not consider any material beyond the pleadings.  See Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999).  Documents attached to the complaint are part of the complaint and are properly considered on a motion to dismiss.  Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").  See Robinson v. Ladd Furniture, Inc., No. 92-228995, 995 F.2d 1064 (Table), 1993 WL 211309, at *3 (4th Cir. June 14, 1993).  Plaintiff has attached the following documents to her Complaint that will be considered on this motion to dismiss: Plaintiff's application signed and dated on April 3, 2006; Preliminary and Final Truth In Lending Disclosure Statements ("TILDS") dated March 13, 2006, and April 3, 2006, respectively; a Preliminary Good Faith Estimate dated

March 13, 2006; Addendum D showing Correspondent/Broker Fees; an unsigned and undated Settlement Statement; and an Appraisal.

In addition to documents attached to the Complaint, the Court may consider material attached to the motion to dismiss that "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." Phillips v. LCI Int'l Inc., 190 F.3d at 618 (internal citations omitted). Defendants attached to their motion to dismiss and request judicial notice of 1) a copy of Plaintiff's application dated by the interviewer on March 30, 2006, and by Plaintiff on April 3, 2006; 2) a Truth-in-Lending Disclosure Statement ("TILDS") with a date prepared of February 17, 2006, and allegedly signed by Plaintiff on March 5, 2006; 3) a final TILDS allegedly signed by Plaintiff on April 3, 2006; 4) an Adjustable Rate Rider allegedly signed by Plaintiff on April 3, 2006; 5) a Prepayment Rider allegedly signed by Plaintiff on April 3, 2006; 6) an Adjustable Rate Mortgage Loan Disclosure Statement allegedly signed by Plaintiff on April 3, 2006; 7) a POWER ARM Option Adjustable Rate Mortgage flyer; 8) a Good Faith Estimate dated February 17, 2006, and allegedly signed by Plaintiff on March 6, 2006; and 8) an Affiliated Business Arrangement Disclosure allegedly signed by Plaintiff with a date prepared of March 14, 2006.

Plaintiff disputes the following documents submitted by Defendants: the application, the preliminary TILDS, the POWER ARM Option Adjustable Rate Mortgage flyer, the Preliminary Good Faith Estimate, and the Affiliated Business Arrangement Disclosure.  Plaintiff has attached what she argues to be the correct documents as to each of these and references them in her Complaint and in her Opposition to the Motion to Dismiss.  The determination of which documents are correct is more appropriately left to the fact finder at trial.  Thus, for purposes of this Motion to Dismiss, because the Court is mandated to accept all well-plead facts as true and may consider documents properly attached to the complaint, of these contested documents, the Court will refer to the Plaintiff's versions of the documents and not to the Defendants' in determining whether dismissal is appropriate.

The final TILDS attached to Defendants' Motion is identical to that attached to Plaintiff's Complaint.  It is thus considered insofar as Plaintiff's attachment is considered.

Plaintiff does not contest the Adjustable Rate Rider or the Prepayment Rider attached to Defendant's Motion as inaccurate, but says that they weren't presented in the "Good Faith Package."  Plaintiff does not explain, however, what the Good Faith Package is.  Plaintiff also does not dispute the Adjustable Rate Mortgage Loan Disclosure Statement.  Because

Plaintiff does not dispute these disclosures and she references them in her Complaint, they will be considered in this Motion to Dismiss.

In addition, Plaintiff alleges additional facts in her Opposition to Defendants' motion and appears to be making additional claims; although the additional claims are not explicit.  Because of the Court's obligation to liberally construe a pro se Complaint, the Court will consider the existing facts to the extent that the additional facts support her existing claims.  See Donahue v. United States Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990) abrogated on other grounds by Sosa v. Alvarez-Machain, 542 U.S. 692 (2004) (holding that due to "[t]he court's duty to adopt a generous attitude when evaluating a pro se complaint" that it would consider the allegations in the plaintiff's opposition to the motion to dismiss where they are consistent with the allegations in the complaint).  See also Smith v. Blackledge, 451 F.2d 1201, 1202-03 (4th Cir. 1971) (holding that a document denominated by the plaintiff as one to "further particularize" the complaint, which included new claims, but construed by the District Judge as an opposition to the defendants' motion to dismiss should have been considered an amendment to the complaint); Riner v. Edwards, Civ. No. 7:07-cv-00455, 2008 WL 4388788, at * 6 (W.D. W. Va. Sept. 26, 2008)(holding that the court would construe the

plaintiff's opposition to the motion to dismiss to the extent

that it raised new claims because of the "less stringent"

pleading standards to be accorded <u>pro se</u> plaintiffs);   <u>Motto v.</u>

<u>Correctional Medical Services</u>, Civ. No. 5:06-cv-00163, 2007 WL

2897854, at *3 (S.D. W. Va. Sept. 27, 2007) (upholding the

magistrate judge's decision to consider the plaintiff's response

brief as a pleading because "the court is charged with liberally

construing a pleading filed by a <u>pro se</u> litigant to allow for

the development of a potentially meritorious claim").   The Court

will not, however, recognize any additional claims at this time

as it is not clear from Plaintiff's Opposition whether she is

pleading additional claims or simply additional facts. [3]

---

[3] On several occasions within the Complaint and her Opposition,
Plaintiff seems to allege that Defendants violated the Equal
Credit Opportunity Act (ECOA) and the Real Estate Settlement
Procedures Act (RESPA).   Because she has not alleged these
claims as separate counts, it is unclear if she intended these
references to be factual allegations or additional claims.

Regardless, it does not appear that Plaintiff could allege any
facts that would state a violation of ECOA.   Thus, to the extent
that Plaintiff was attempting to claim Defendants violated ECOA
that claim will be dismissed for failure to state a claim.

Whether Plaintiff could successfully allege a RESPA claim,
however, particularly as to her allegations that Defendants
required her to use Defendants' affiliated settlement providers
is less clear.   Thus, to the extent that Plaintiff was
attempting to claim Defendants violated RESPA, the claim will be
dismissed at this time but with leave to amend within 30 days.

**B.   Federal Rule of Procedure 8(a) and (e)**

Defendants' first argument is that Plaintiff's Complaint should be dismissed for a failure to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" under Federal Rule of Civil Procedure 8(a) and because the averments of the Complaint are not "simple, concise, and direct" as directed by Rule 8(e)(1).  "What is a 'short and plain' statement depends upon the nature of the case."  <u>Barnes v. A. Sind & Assoc.</u>, 32 F.R.D. 39, 40 (D. Md. 1963) (citing 2 Moore's Federal Practice, 2d ed., ¶8.13, p. 1653).  When determining whether a complaint fails to comply with Rule 8(a), "courts have looked to various factors, including the length and complexity of the complaint, whether the complaint was clear enough to enable the defendant to know how to defend himself, and whether the plaintiff was represented by counsel.  <u>North Carolina v. McGuirt</u>, 114 Fed. App'x. 555, 558 (4th Cir. 2004) (internal citations omitted).  As is the case here, <u>pro se</u> complainants are held to less stringent standards than formal pleadings drafted by lawyers.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  "Pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated, and even if the claim is insufficient in substance, it may be amended to achieve justice."  <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978) (citing <u>Rice v. Olson</u>, 324 U.S. 786,

791-92 (1945) and Holiday v. Johnston, 313 U.S. 342, 350
(1941)).  "A complaint, especially a <u>pro</u> <u>se</u> complaint, should
not be dismissed summarily unless 'it appears beyond a doubt
that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief.'"  <u>Id.</u> (quoting <u>Conley</u>
<u>v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  Moreover, "a reasonable
latitude should be allowed to a pleader in the statement of his
claim or defense. . . .  In practice, what matters is not alone
whether the phrase is immaterial, but whether its presence, if
it be immaterial, is calculated to be harmful."  <u>Barnes</u>, 32
F.R.D. at 40 (citing <u>Sinkbeil v. Suhr</u>, 7 F.R.D. 92 (D.C. Neb.
1946)).

Here, Plaintiff's Complaint can hardly be called artful and
even qualifies as disorganized, but it does state sufficient
facts to establish some valid claims.  The relevant facts and
claims are easily distinguishable such that Defendants can
suitably respond to them and defend themselves – in fact, the
Defendants have done so in their reply memorandum.  While there
may be some extraneous or duplicative facts, they are not
calculated to be "harmful."  As such, under the liberal pleading
standards granted to a <u>pro</u> <u>se</u> Plaintiff, Plaintiff's Complaint
is sufficient and will not be summarily dismissed on Rule 8
grounds.

## C.   Truth In Lending Act Claims (Counts I-III)

Plaintiff raises three counts related to the Truth-in-Lending Act (TILA).  Count I alleges violations of two TILA disclosure regulations that took place prior to and at closing. Plaintiff claims that Defendants' use of the term Conventional and the 1% interest rate on several of the pre-closing disclosures as well as the disclosed APR was misleading and therefore not clear and conspicuous as required by 12 C.F.R. §§ 226.17, 226.18.  Moreover, Defendants failure to indicate that the 1% rate was a discounted rate and the variable rate disclosures, particularly as to the certainty of negative amortization did not meet the clear and conspicuous requirement of 12 C.F.R. §§ 226.17 and 226.19.  Plaintiff also alleges that she did not receive the required pre-closing disclosures in the time frame mandated by TILA under 12 C.F.R. § 226.19(a)(1) & (a)(2). Plaintiff's second count is for violating TILA provisions as to notice of changes in interest rate following the consummation of the mortgage under 12 C.F.R. § 226.20(c). In Count III Plaintiff claims that Defendants violated the advertising disclosure provisions of 15 U.S.C. § 1664.

TILA is a consumer protection statute enacted by Congress "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."

15 U.S.C. § 1601(a).  Pursuant to its congressionally-delegated authority, the Federal Reserve Board implemented TILA through its issuance of Regulation Z, 12 C.F.R. § 226 et seq., and its interpretations and Official Staff Commentary, 12 C.F.R. Pt. 226, Supp. I ("Staff Commentary").  Courts have noted that TILA is a remedial statute that is liberally construed in the favor of consumers.  White v. Arlen Realty & Development Corp., 540 F.2d 645, 649 (4th Cir. 1975) ("The language of [TILA] should be construed liberally in light of its broadly remedial purpose.").  In order to ensure that the consumer is protected as Congress envisioned, the provisions of the Act and its implementing regulations must be strictly enforced.  Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir. 1983) superseded by statute and regulation on other grounds.  Moreover, "'a misleading disclosure is as much a violation of TILA as a failure to disclose at all.'"  Nkengfack v. Homecomings Financial, LLC, No. RDB 08-2746, 2009 WL 1663533, at *2 (D. Md. June 15, 2009) (quoting Barnes v. Fleet Nat. Bank, N.A., 370 F.3d 164, 174 (1st Cir. 2004) quoting Smith v. Chapman, 614 F.2d 968, 977 (5th Cir. 1980)).

1.   Statute of Limitations

Defendants' first argument relating to the alleged TILA violations is that Plaintiff's TILA claims are time barred by a

one year statute of limitations.  15 U.S.C. § 1640(e) provides
that "[a]ny action under this section may be brought in any
United States district court, or in any other court of competent
jurisdiction, within one year from the date of the occurrence of
the violation."  Where the violations alleged relate to failures
of the lender to provide required pre-loan consummation
disclosures, the "occurrence of the violation" is generally
considered to be the date the loan agreement is entered into.
See, e.g., Davis v. Edgemere Finance Co., 523 F. Supp. 1121,
1123 (D. Md. 1981) ("[Section 1640(e)'s] one-year limitation
period begins to run from the date the loan agreement is entered
into.").  Here, Plaintiff allegedly closed on her loan on April
3, 2006.  Plaintiff filed her Complaint on April 3, 2007.  The
Fourth Circuit computes the statue of limitations periods in
statutes using Federal Rule of Civil Procedure 6(a) which
"exclude[s] the day of the act, event, or default that begins
the period."  Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir.
2000).  Thus, the statute of limitations here began to run on
April 4, 2006, and expired on April 3, 2007.  Plaintiff thus
filed her Complaint within the period of the statute of
limitations and her TILA claims for damages will not be
dismissed on this basis.

Plaintiff also requests rescission under TILA.  15 U.S.C. §
1635(a) provides that

> in the case of any consumer credit transaction . . .
> in which a security interest, . . ., is or will be
> retained or acquired in any property which is used as
> the principal dwelling of the person to whom credit is
> extended, the obligor shall have the right to rescind
> the transaction until midnight of the third business
> day following the consummation of the transaction or
> the delivery of the information and rescission forms
> required under this section together with a statement
> containing the material disclosures required by this
> subchapter, whichever is later, by notifying the
> creditor, in accordance with regulations of the board,
> of his intention to do so.  The creditor shall clearly
> and conspicuously disclose, in accordance with
> regulations of the Board, to any obligor in a
> transaction subject to this section the rights of the
> obligor under this section.  The creditor shall also
> provide, in accordance with regulations of the Board,
> appropriate forms for the obligor to exercise his
> right to rescind any transaction subject to this
> section.

15 U.S.C. § 1635(f) provides that where the material disclosures

and/or the required rescission notice are not delivered to the

consumer, the right of rescission expires three years after the

date of consummation of the transaction with certain exceptions

that do not apply here.

According to the Staff Commentary, "the period within which

the consumer may exercise the right to rescind runs for 3

business days from the last of 3 events:

- consummation of the transaction;
- delivery of all material disclosures; and

16

- delivery to the consumer of the required rescission notice."

Staff Commentary, cmt. 23(a)(3)-1.  Where any one of the three events does not occur, however, the consumer has three years from the consummation of the loan to rescind.

To effect delivery, "it is not sufficient for the creditor merely to show the consumer the document containing the disclosures before the consumer signs and becomes obligated. The consumer must be free to take possession of and review the document in its entirety before signing."  Staff Commentary, cmt. 17(b)-3.  The Staff Commentary to 12 C.F.R § 226.17 provides an example that would satisfy the disclosure requirement: "A creditor gives a consumer a multiple-copy form containing a credit agreement and TILA disclosures.  The consumer reviews and signs the form and returns it to the creditor, who separates the copies and gives one copy to the consumer to keep."  Id.

Section 226.23 of Regulation Z provides that the term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2).  12 C.F.R. § 226.23 n.48.  In addition, the Commentary to Regulation Z further elucidates the meaning of

17

material disclosures by stating that a "failure to provide information regarding the annual percentage rate also includes failure to inform the consumer of the existence of a variable rate feature." Staff Commentary, cmt 23(a)(3)-2. "Failure to give the other required disclosures does not prevent the running of the rescission period, although that failure may result in civil liability or administrative sanctions." Id.

Plaintiff does not state sufficient allegations in her Complaint to maintain a rescission claim and it will be dismissed without prejudice and with leave to amend within thirty days. First, it is unclear from Plaintiff's Complaint who currently owns the mortgage note at issue and whether the Defendants are the correct parties on whom to exercise a right to rescission. Second, Plaintiff states in her Opposition to the Motion to Dismiss that she did not receive a copy of the final TILDS at closing, but that she "received a set of documents back in the mail sometime after closing." Thus, it is unclear when Plaintiff actually received the material disclosures. Finally, Plaintiff states in her Opposition that she was asked to sign a release at closing saying that she would not be rescinding the loan, but does not state whether she ever received two copies of the notice of her right to rescind. Without knowing if or when Plaintiff received the material

disclosures and the two copies of the notice of right to
rescind, it is impossible to determine if Plaintiff's request
for rescission was made within three days of the deliverance of
the disclosures.

## 2.   Count I: TILA's Pre-Closing Disclosures

Plaintiff's allegations for violations of TILA under Count
I involve allegations that the required disclosures under §§
226.18 and 226.19 were not clear and conspicuous as required by
§ 226.17 and that they were not timely made.  As explained
below, this Court finds that Plaintiff has not stated facts to
establish that the disclosures made under § 226.18 were not
clear and conspicuous as required by § 226.17 and that claim
will be dismissed.  Plaintiff has, however, stated sufficient
facts to survive the motion to dismiss as to whether the
disclosures required by § 226.19 were made clearly and
conspicuously.  In addition, Plaintiff has stated sufficient
facts to survive Defendant's Motion to Dismiss as to the
timeliness of the disclosures made by Defendants as required by
§ 226.19(a)(1) & (a)(2).

All disclosures required by Subpart C of Regulation Z,
which includes 12 C.F.R. §§ 226.18 and 226.19, must be made
clearly and conspicuously, in writing, in a form that the
consumer may keep.  12 C.F.R. § 226.17(a)(1).  The required

timing of the disclosures in variable rate mortgage transactions
are outlined by 12 C.F.R. §§ 226.19(a) & (b), 226.20(c), but in
all cases must be given prior to consummation of the
transaction.  12 C.F.R. § 226.17(b)

### a.   12 C.F.R. § 226.18 Disclosures

Section 226.18 of Title 12 requires the following
disclosures on mortgages pertinent to Plaintiff's Complaint:

1.   Itemization of the amount financed, which may be
satisfied by the Good Faith Estimate of settlement
costs as provided by the Real Estate Settlement
Procedures Act (12 USC 2601 et seq.);

2.   The annual percentage rate ("APR");

3.   If the APR may increase after consummation of the
transaction, the disclosure must show that the
transaction contains a variable-rate feature and there
must be a statement that variable-rate disclosures
have been provided earlier;

4.   A statement as to whether a prepayment penalty will be
imposed.

Plaintiff makes several allegations relating to violations
of § 226.18.  Plaintiff claims that the application and the Good
Faith Estimate showed a 1% interest rate and that the only place
on the preliminary disclosures that showed anything close to the

actual interest rate accruing on Plaintiff's loan was the APR on the TILDS, which she alleges, even Defendants acknowledge is a term confusing to consumers.  Compl. ¶¶ 32, 35, 36.  Moreover, she alleges that both the Good Faith Estimate and the TILDS were misleading as they showed the type of loan as "conventional" without using the terms ARM, pay option arm, negative amortization, index plus margin or any clarification of the term "conventional."  Id. ¶ 24, 25, 33.  Moreover, Plaintiff contends that the only use of the word conventional in their descriptions of mortgage loan products on their website is attached to a conforming fixed loan, which further contributes to the lack of clarity as to what loan product she was purchasing.  Id. ¶ 24.

While Plaintiff's allegations may in fact have contributed to Plaintiff being misled about her loan, none of them result in violations of § 226.18.  Under § 226.18, the Good Faith Estimate serves the purpose of itemizing the amount financed, including the amount of any proceeds distributed to the consumer, the amount credited to the consumer's account with the creditor, any amounts paid to third persons by the creditor on behalf of the consumer, and the prepaid finance charge.  Plaintiff makes no allegations that Defendants did not clearly and conspicuously make these disclosures on the Good Faith Estimate, however.

Similarly, Defendants here used the model TILDS form provided in Appendix H-2 to Regulation Z.  While Plaintiff may find the use of the term APR misleading, Defendants were required to include the APR by law and she has not alleged that the APR shown on her final TILDS was not accurate.  Nor has Plaintiff alleged that the TILDS did not include clearly and conspicuously any of the required disclosures under § 226.18.

Plaintiff's argument that the use of the term "conventional" to describe her loan type on the application, Good Faith Estimate, and TILDS was misleading because there were no further clarifications as to the adjustable rate nature of her loan is unavailing as to the Section 226.18 disclosures. Section 226.18 requires that if the APR may increase after consummation of the transaction, the TILDS must show that the transaction contains a variable-rate feature accompanied by a statement that variable-rate disclosures have been provided earlier.  Both the preliminary and final TILDS attached to Plaintiff's Complaint included these required statements. Moreover, Defendants argue and Black's law dictionary supports that the term "Conventional" when referring to a mortgage is a term of art indicating that the loan is not federally insured and is not a reference to the amortization of the loan.  BLACK'S LAW DICTIONARY 300 (8th ed. 2004), "mortgage."  Plaintiff's

application also made this distinction clear as it shows the possible loan types as conventional, VA, FHA, USDA/Rural Housing Service, and Other, while under amortization type it shows that it is an ARM of the type (AH) 1 Mo. MTA thus indicating that the loan can be both conventional and an adjustable rate. Plaintiff's alleging that Defendants' website shows a loan called "conventional conforming fixed rate" is irrelevant to her argument as she pulled that from their website on April 1, 2007, almost a year after she closed on her loan and she never alleges that a similar term influenced her understanding at the time that she was considering whether to purchase the loan.  Thus, Plaintiff's claim that the § 226.18 disclosures were not clear and conspicuous as required under § 226.17 will be dismissed.

Nonetheless, even though the allegations are not sufficient to state that the § 226.18 disclosures were not clear and conspicuous, Plaintiff may be able to establish that Defendants' disclosures were not timely under 12 C.F.R. § 226.19(a)(1) and (a)(2) and not "in a form that the consumer may keep before consummation of the transaction" as required by § 226.17(a)(1). In mortgage transactions subject to the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) the disclosures under 12 C.F.R. § 226.18 (which was allegedly made here in the form of the TILDS and the Good Faith Estimate) must "be delivered or

mailed to the consumer no later than the third business day
after the creditor receives the consumer's written application"
and no "later than the seventh business day before consummation
of the transaction."   12 C.F.R. § 226.19(a)(1)(i) &
§226.19(a)(2)(i).  If the disclosed APR becomes inaccurate, as
defined by § 226.22, "the creditor shall provide corrected
disclosures with all changed terms.  The consumer must receive
the corrected disclosures no later than three business days
before consummation."  12 C.F.R. § 226.19(a)(2)(ii).  According
to the staff commentary "[i]t is not sufficient for the creditor
merely to show the consumer the document containing the
disclosures before the consumer signs and becomes obligated.
The consumer must be free to take possession of and review the
document in its entirety before signing."  Staff Commentary, cmt
17(b)-3.

Defendants have not argued that the mortgage transaction
here was not subject to the Real Estate Settlement Procedures
Act, thus, the preliminary TILDS and Good Faith Estimate was to
be delivered or mailed to Plaintiff within three days of when
she applied for her loan.  Plaintiff alleges that she did not
receive the TILDS, however, for almost three weeks after she
submitted her application, Compl. ¶ 22, which may be sufficient
to allege a violation of 12 C.F.R. § 226.19(a)(1)(i).  Moreover,

Plaintiff alleges that the final § 226.18 disclosures were
different from the preliminary disclosures, most importantly by
having a different APR and showing that Plaintiff may have to
pay a prepayment penalty.  Compl. ¶ 30; Preliminary and Final
TILDS.  Plaintiff alleges that she did not even see the changed
disclosures, however, until closing and that she was not given
time to read them nor did the settlement agent leave copies with
her.  Opp. ¶¶ 16, 18, 25, 26.  This late provision of the
disclosures alleged by Plaintiff does not appear to comply with
§ 226.19(a)(2)(ii) requiring receipt of the corrected
disclosures three business days prior to consummation nor does
it comply with the § 226.17(a)(1) requirement that she receive
the disclosures in a form that she could keep.  Thus,
Plaintiff's claim as to the timeliness and manner of delivery of
the § 226.18 disclosures will not be dismissed.

### b.   12 C.F.R. § 226.19(b)(2) Disclosures

Although Plaintiff's Complaint does not state sufficient
facts to make a claim that the disclosures violated § 226.18,
Plaintiff's allegations, if true, may be sufficient to establish
various violations of the variable rate disclosure requirements
under § 226.19(b).  Plaintiff alleges that she did not receive,
as required by § 226.19(b), a variable rate disclosure
particular to her loan, that the disclosures did not indicate

that she was receiving a discounted rate, and did not explain that making the 1% interest rate payments would certainly result in negative amortization of her loan.

Section 226.19(b) provides that "[i]f the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year," the lender is required to make certain disclosures at the time an application form is provided or before the consumer pays a non-refundable fee.  Among these disclosures must be "a loan program disclosure for each variable-rate program in which the consumer expresses an interest."  12 C.F.R. § 226.19(b)(2).  In particular, the loan program disclosure must include

(i)     the fact that the interest rate, payment, or term of the loan can change;

(ii)    the index or formula used in making adjustments, and a source of information about the index or formula;

(iii)   an explanation of how the interest rate and payment will be determined, including an explanation of how the index is adjusted, such as by the addition of a margin;

(iv)    a statement that the consumer should ask about the current margin value and current interest rate;

(v)     the fact that the interest rate will be discounted and a statement that the consumer should ask about the amount of the interest rate discount;

(vi)    the frequency of the interest rate and payment changes;

(vii)   any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment

                    limitations, negative amortization, and interest
                    rate carryover.

12 C.F.R. § 226.19(b)(2).


     Plaintiff alleges and the disclosures show that her

application and good faith estimate showed an interest rate of

1% for 480 months.  Compl. ¶ 23.  According to Plaintiff's

allegations and the attachments to Defendant's Motion, the only

disclosure Plaintiff received prior to closing showing an

interest rate other than 1% was the TILDS, which showed an APR

of 6.320%.  Id. ¶¶ 32, 35, 36.  Even the TILDS, however, appears

to show monthly payments based on the 1% interest rate.  Id. ¶

58.  None of these documents reveals that the 1% rate is a

discounted rate.  Plaintiff does not state clearly in her

Complaint whether she received the adjustable rate mortgage

disclosure statement prior to closing, but assuming that she

did, the adjustable rate mortgage disclosure statement allegedly

given to Plaintiff discusses both discount and premium rates

saying that any and all could potentially apply to her mortgage.

     The Disclosure states

          If your Initial Interest Rate is an amount that
     is lower than the Fully Indexed Rate, this is called a
     "Discounted Rate".  If your Initial Interest Rate is a
     Discounted Rate, because your initial monthly payment
     will be determined using the Initial Interest Rate and
     your first adjusted payment will be determined using
     an adjustable rate that is based on the index plus
     Margin, your first adjusted payment may increase even
     if the index decreases or remains the same.  If your
     initial interest rate is an amount that is higher than

                                  27

the Fully Indexed rate, this is called a "Premium
Rate".  If your Initial Interest Rate is a Premium
Rate, because your initial monthly payment will be
determined using the Initial Interest Rate and your
first adjusted payment will be determined using an
adjustable rate that is based on the Index plus
Margin, your first adjusted payment may decrease even
if the index remains the same or increases.  The
adjustable rate that is used to determine your first
adjusted payment may be higher or lower than the
Subsequent Rate.  Ask us for the amount of our current
discounts and premiums.  (As described in the section
below entitled "Increase in Principal Balance
(Negative Amortization)".

Nowhere does the Disclosure specify that the 1% interest

rate appearing on the various other disclosures is a discounted

rate.  Thus, Plaintiff has alleged sufficient facts to plausibly

state a claim under § 226.19(b)(2)(v) requiring that the lender

disclose clearly and conspicuously the fact that the interest

rate will be discounted.  Accord Velazquez v. GMAC Mortgage

Corp., 605 F. Supp. 2d 1049, 1067 (C.D. Cal. 2008) (holding that

the language used in the disclosures regarding the initial

interest rate, which is ambiguous as to whether it is a

discounted rate or not, may be sufficient for Plaintiff to make

out a claim that the disclosures were not clear and conspicuous

under § 226.19(b)(2)(v)); Plascencia v. Lending First Mortgage,

No. C 07-4485 CW, 2008 WL 1902698, at *5 (N.D. Cal. April 28,

2008) (holding that "Plaintiffs may be able to show that they

were not alerted in clear and conspicuous terms that the one-

percent interest rate was a discounted rate" based on language in the mortgage note).

In addition, Plaintiff alleges and the adjustable rate mortgage loan disclosure statement attached by Defendants supports her contention that the loan program disclosure provided to Plaintiff was not specific to Plaintiff's loan, as required by § 226.19(b)(2), but rather discusses several different MTA power arms without specifying which applied to her.  Comp. ¶ 94, 95, Opp. ¶ 27(2).  In addition, as already discussed, the disclosure discusses both discounted rates and premium rates and situations where neither is part of the mortgage.  Thus, Plaintiff has also alleged sufficient facts to state a claim under § 226.19(b)(2) requiring that the lender provide a loan program disclosure for each variable-rate program in which the consumer expresses an interest.

Finally, Plaintiff alleges, and the adjustable rate mortgage disclosure supports, that the variable rate disclosures and explanations of negative amortization framed negative amortization as a mere possibility by using language such as "sometimes" and "may" instead of "always" and "will" despite the certainty that Plaintiff would experience negative amortization if she paid according to the payment schedule.  Opp. ¶ 28(4).

The Staff Commentary explains that

> [i]n transactions where paying the periodic payments
> will not fully amortize the outstanding balance at the
> end of the loan term and where the final payment will
> equal the periodic payment plus the remaining unpaid
> balance, the creditor must disclose this fact.  For
> example, the disclosure might read, 'Your periodic
> payments <u>will</u> not fully amortize your loan and you
> <u>will</u> be required to make a single payment of the
> periodic payment plus the remaining unpaid balance at
> the end of the loan term."

Staff Commentary, cmt. 19(b)(2)(iii)-1 (emphasis added).

Similarly, the Staff Commentary to § 226.19(b)(2)(vii) says

> A creditor must disclose, where applicable, the
> possibility of negative amortization.  For example,
> the disclosure might state, "If any of your payments
> is not sufficient to cover the interest due, the
> difference will be added to your loan amount.... If
> the consumer is given the option to cap monthly
> payments that may result in negative amortization, the
> creditor must fully disclose the rules relating to the
> option, including the effects of exercising the option
> (such as negative amortization <u>will</u> occur and the
> principal balance <u>will</u> increase).

Staff Commentary, cmt. 19(b)(2)(vii)-2 (emphasis added).

The Adjustable Rate Mortgage Loan Disclosure Statement allegedly provided to Plaintiff explains in the description of the monthly payment calculation that Plaintiff may pay off the loan in full sooner than expected or may have a balance remaining at the end.

> Since the interest rate changes more frequently than
> the payment change, <u>the loan may be paid in full</u>
> <u>sooner than expected</u> if the interest rate decreases
> substantially, or an extra amount may have to be paid
> at the end if the interest rate rises substantially
> during the last few years of the loan term.

The adjustable rate disclosure then goes on to explain negative amortization.

> The principal balance on your loan <u>can increase</u> even though you are making the required monthly payments. This is called "Negative Amortization".  This <u>can happen</u> as described in this section.  If the Initial Interest Rate, which is used to establish the initial monthly payment, is lower than the Subsequent Interest Rate, which applies commencing on the first day of the month immediately following the month in which your loan closes, the initial monthly payment will be insufficient to pay the interest that is accruing during the Subsequent Interest Rate period. Additionally, following the end of the Subsequent Interest Rate period, your Interest rate will become an adjustable rate that may change monthly.  Subject to the 125.000% Principal Balance Limitation, your monthly payment will change on the due date of your twelfth monthly payment, and every twelve months thereafter.  Thus, even if your monthly payment adjusts to an amount that will pay the interest that is accruing at the time, once the interest rate changes the adjusted monthly payment <u>may be</u> insufficient to pay the interest that accrues. Further, except for each fifth scheduled payment change, and subject to the 125.000% Principal Balance Limitation, the monthly payment may not be increased by more than 7-1/2% from the previous payment amount. This cap <u>may</u> keep the monthly payment below the amount that is necessary to fully pay the interest that is accruing.

> If your monthly payment is not sufficient to pay monthly interest, you may take advantage of the negative amortization feature by letting the interest defer and become part of the principal balance to be paid by future monthly payments, or you may also choose to limit any negative amortization by increasing the amount of your monthly payment or by paying any deferred interest in a lump sum at any time.  Ask us about the payment options available for these loan programs.

Plaintiff's adjustable rate rider, attached to Defendants' Motion to Dismiss and judicially noticed by this Court explained that Plaintiff would pay interest at a yearly rate of 1% until April 3, 2006 (23 days after the closing of her loan) and that her initial monthly payment would be based on that rate. Commencing May 1, 2006, however, she would pay interest at a yearly rate of 7.438%.  Furthermore, the interest rate that Plaintiff would be required to pay may face further changes on the 1st day of June, 2006 and on that day every month thereafter.  Each date that her interest rate could change is called a "Change Date."  On each Change Date, the interest rate would be calculated by adding Three and 550 thousands percentage points (the "Margin") to the Current Index.  According to the Adjustable Rate Rider, the interest rate is capped at 9.950%.

If this manner of adjusting the interest rate is not confusing enough, every year starting on June 1, 2007, and on the same date each twelfth month thereafter (the "Payment Change Date"), Defendants would determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance Plaintiff was expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments.  The result of this calculation is the new amount of Plaintiff's monthly payment and

Plaintiff was to pay that new payment until the next Payment Change Date.

The Payment Changes, however, are subject to two limitations.  First, the amount of the new monthly payment is limited to 7 ½% more or less than the current payment.  Second, after a not so clear explanation of negative amortization, the Adjustable Rate Rider explains that the unpaid Principal of the mortgage can never exceed 125% of the principal amount borrowed. If the unpaid Principal will exceed that amount, the new monthly payment could exceed the 7 ½% annual payment increase limitation.  Finally, on the fifth anniversary of the due date of the first monthly payment, and that same day every five years thereafter, the monthly payment will be adjusted without regard to the 7 ½%  payment cap.

The statements in the adjustable rate mortgage disclosure indicate that negative amortization is a mere possibility.  Yet it is inconceivable to this Court under any possible Index value how Plaintiff's mortgage loan, assuming her allegations are true, could not have resulted in negative amortization if she was paying the monthly payment as outlined in the Adjustable Rate Rider.  Again, assuming the allegations are true, Defendants must have known of this certainty at the time that they provided her with the disclosure.  Thus, Plaintiff may be able to demonstrate that these hypothetical references to

negative amortization do not clearly and conspicuously disclose "the effects of exercising the [payment cap]" such that "negative amortization <u>will</u> occur and the principal balance <u>will</u> increase."  This Court's decision is in accord with courts that have ruled on almost identical language.  <u>See</u> <u>Velazquez</u>, 605 F. Supp. 2d at 1066 (holding that "while the disclosures perhaps accurately stated how negative amortization would occur, Plaintiffs may be able to show that these references did not clearly and conspicuously disclose that, by exercising the payment cap, negative amortization would definitely occur during the first few years."); <u>Mincey v. World Savings Bank, FSB</u>, 614 F. Supp. 2d 610, 638 (D.S.C. 2008) (granting "Plaintiffs' Motion for Judgment on the Pleadings with respect to the claim that [Defendant] violated the TILA by disclosing negative amortization was a possibility when in fact it was a certainty"); <u>Plascencia</u>, 2008 WL 1902698, at *5-6 (holding that "Plaintiffs may be able to show that the Note's reference to negative amortization as a hypothetical event does not clearly and conspicuously disclose 'the effects of exercising the [payment cap] option' –i.e., that 'negative amortization <u>will</u> occur and the principal loan balance <u>will</u> increase.'"); <u>Mandrigues v. World Savings, Inc.</u>, No. C 07-04497 JF, 2008 WL 1701948, at * 2 (N.D. Cal. April 9, 2008) (holding that where Plaintiffs allege that the promissory notes issued in connection

with the subject loans state that negative amortization is a
mere possibility, where in fact such occurrence was guaranteed,
the plaintiff adequately pleaded a claim under 12 C.F.R. §§
226.17 and 12 C.F.R. § 226.19).  Therefore, the court will deny
Defendant's motion as to Plaintiff's claim relating to
violations of the variable rate disclosure requirements of 12
C.F.R. § 226.19(b)(2).

The Court notes that Defendants raised the language in the
Adjustable Rate Rider attached to the Note to argue that the §
226.19(b)(2) disclosures were made.  The Court questions whether
the Adjustable Rate Rider can be considered a disclosure for the
purposes of § 226.19(b)(2) given that the disclosures are to be
made at the time Plaintiff applied for the loan and the Rider is
a part of the Note signed at closing.  Regardless, even if the
Court were to consider the Rider, the Court's conclusion would
be the same as to the discounted rate (the Rider does not
specify that the 1% rate is a discounted rate) and as to the
negative amortization (the language in the Rider similarly
expresses negative amortization as a possibility and not as an
occurrence certain to occur).  The only difference would be that
the Rider is specific as to Plaintiff's loan and would not
violate § 226.19(b)(2) as to that claim.  As this is a motion to
dismiss, however, and it is unknown when Plaintiff received the

rider, the Court will not dismiss that claim on the basis of the adjustable rate rider.

3.   Count II: TILA's Post-Closing Disclosures

Plaintiff's second count alleges that Defendants violated TILA's post closing disclosure requirements regarding interest rates and payments relating to variable-rate adjustments under 12 C.F.R. § 226.20(c).  Section 226.20(c) applies to variable rate transactions subject to § 226.19 in which adjustments to the interest rate may occur with or without a corresponding adjustment to the payment.  With such transactions the creditor must provide new disclosures to the debtor under two circumstances: 1) if there is an adjustment to the interest rate without an accompanying payment change the disclosure must be made once per year; 2) if there is a payment due at a new level, the disclosure must be made at least 25, but no more than 120 calendar days before payment at the new level is due.  12 C.F.R. § 226.20(c).  The disclosure must contain the following information:

(1) The current and prior interest rates.

(2) The index values upon which the current and prior interest rates are based.

(3) The extent to which the creditor has foregone any increase in interest rate.

(4) The contractual effects of the adjustment,
including the payment due after the adjustment is
made, and a statement of the loan balance.

(5) The payment, if different from that referred to in
paragraph (c)(4) of this section, that would be
required to fully amortize the loan at the new
interest rate over the remainder of the loan term.

Id.

Plaintiff alleges that the mortgage note showed a 1%

interest rate in April 2006, but that the rate increased to over

7% in May 2006 and that it continued to rise monthly thereafter.

Compl. at ¶ 45.  Plaintiff alleges that Defendants did not

provide her with advance notice of the changes, but only after

the fact.  Id.  Moreover, Plaintiff alleges that the notices of

the rate changes did not contain a new payment schedule that

would allow Plaintiff to fully amortize the loan.  Id.

Plaintiff has alleged sufficient facts to state a claim

under § 226.20(c)(5) because she alleges that the notice of

interest rate changes Defendants sent did not state the payment

amount that would be required to fully amortize the loan at the

new interest rate over the remainder of the loan term.

Plaintiff does not state a claim under § 226.20(c), however, as

regards the timing of the notice since other than the situation

where the rate change results in a payment change, which

Plaintiff does not allege happened here, § 226.20(c) requires

only that the notice of rate change be made once per year and it

37

does not require that it be made in advance of the change.
Thus, Plaintiff's claim for violation of § 226.20(c)(5),
Defendant's alleged failure to state the payment amount needed
to fully amortize the loan in the rate change notice, will not
be dismissed.  Plaintiff's § 226.20(c) claim will be dismissed,
however, in so far as it alleges that the notice was not timely
made.

4.   Count III: TILA's Advertising Disclosures

     Plaintiff alleges that she received from AHMC a direct mail
flyer advertising that she had been pre-approved for a 1%
mortgage loan.  Compl. ¶¶ 11, 15, 50.  She claims that the
advertisement indicated that the loan would save her money, act
as a financial tool to build wealth and eliminate debt – none of
which has happened.  Id. ¶ 15, ¶ 50.  Plaintiff contends that
the terms outlined in the advertisement violated the advertising
disclosure requirements of 15 U.S.C. § 1664 and the
corresponding regulation at 12 C.F.R. § 226.24.  In particular,
she alleges that the advertisement that she received did not
reflect clearly and conspicuously the true interest rate, terms
of payment and subsequent negative amortization.  Id. ¶ 17, 65.
Moreover, she claims that the 1% interest rate loan advertised
is not actually a product that Defendants offer.  Id. ¶ 20, 54,
57, 65.

Section 1664 of Title 15 and 12 C.F.R. § 226.24, however, do not provide for a statutory private remedy.  Section 1640 of Title 15 provides a private remedy for violations of Parts B, D, and E of Subchapter I of the Consumer Credit Protection Act. Section 1664 is under Part C of Subchapter I, however, and is not included in the private remedy provided under § 1640. Section 1664 does not itself contain any civil liability provision nor is a civil liability provision contained elsewhere in Part C.  Rather, the legislative history indicates that "authority to enforce compliance with the credit advertising requirements is relegated to administrative agencies as provided in . . . 15 U.S.C. § 1607." Jordan v. Montgomery Ward & Co., 442 F.2d 78, 81 (8th Cir. 1971).  Thus, this Court does not have original subject matter jurisdiction over Plaintiff's advertising claim under 15 U.S.C. § 1664.  Accord Smeyres v. General Motors Corp., 820 F.2d 782, 783-84 (6th Cir. 1987); Jordan, 442 F.2d at 81-82; Fidelity Mortgage Corp. v. Seattle Times Co., 304 F. Supp. 2d 1270, 1273-74 (W.D. Wash. 2004). Plaintiff's Count III will be dismissed.

**D.   Count IV: Fraud and Deceptive Acts**

Within Count IV, Plaintiff raises two separate causes of action: common-law fraud and a violation of the Maryland Consumer Protection Act.  The Court finds that Plaintiff has

alleged sufficient facts to support these claims and Defendants'
motion will be denied as to Count IV.

1.   Fraud

Plaintiff alleges that Defendant AHMC committed fraud 1) by
arranging for a fraudulent appraisal that inflated the value of
her property and 2) by promising her a loan with a 1% interest
rate, $56,000 cash out, and no prepayment penalty with no intent
to perform that promise.  Defendants argue that Plaintiff has
failed to plead her claim with the particularity required by
Federal Rule of Civil Procedure 9(b).  They also argue that even
if this claim is stated with the required specificity, it is
precluded because Plaintiff's reliance on the alleged
misrepresentations was not reasonable and that Plaintiff's
alleged facts do not support a claim of fraud and that her own
claims contradict each other.  Alternatively, Defendants argue
that, even if Plaintiff has stated sufficient facts, fraud
cannot be based on future promises.

To survive a motion to dismiss on a fraud claim under
Maryland law, Plaintiff must allege the following elements: 1)
that a representation made by a party was false; 2) that the
defendant knew the representation was false or made the
misrepresentation with such reckless indifference to truth as to
impute knowledge and an intent to defraud; 3) that the

misrepresentation was made for the purpose of deceiving the plaintiff; 4) that the plaintiff reasonably relied upon the misrepresentation; and 5) that the plaintiff suffered damage directly resulting from the misrepresentation.  Suburban Properties Mgt., Inc. v. Johnson, 204 A.2d 326, 329 (Md. 1964). Fraud claims are subject to Federal Rule of Civil Procedure 9(b), requiring that claimants plead fraud with particularity. The particularities with which fraud claims must be pleaded include "the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990).

Rule 9(b) allows, however, "conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive."  Id.  The intent of Rule 9(b) is to ensure

> "that the defendant has sufficient information to
> formulate a defense by putting it on notice of the
> conduct complained of[,] . . . to protect defendants
> from frivolous suits[,] . . . to eliminate fraud
> actions in which all the facts are learned after
> discovery[,] . . . [and] to protect defendants from
> harm to their goodwill and reputation."

Id. (quoting United States ex rel. Stinson, Lyons, Gerlin &
Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc., 755
F. Supp. 1055, 1056-57 (S.D. Ga. 1990)).  Thus, the Fourth
Circuit has held that "[a] court should hesitate to dismiss a
complaint under Rule 9(b) if the court is satisfied (1) that the
defendant has been made aware of the particular circumstances
for which she will have to prepare a defense at trial, and (2)
that plaintiff has substantial prediscovery evidence of those
facts."  Id.

Here, Plaintiff has alleged that AHMC through ABC
misrepresented to her through advertisements and phone
conversations that she was purchasing a mortgage with a 1%
interest rate with a $56,000 cash out, and no prepayment
penalty.  Compl. ¶¶ 50, 79.  Plaintiff also alleges that
Defendants stated an inflated appraised value.  Id. ¶ 74.  She
alleged that these misrepresentations occurred prior to the
closing of the loan and that she closed on the loan in reliance
on those statements.  Id. ¶¶ 77-79.  She has also alleged that
the Defendants knew that the misrepresentations were false and
that they caused her injury.  Id.  Thus, Plaintiff has pled
fraud with sufficient particularity to meet the requirements of
Rule 9(b).

Defendant alleges that her reliance was not reasonable, however, because she received disclosures showing an APR between 7% and 8% and that her note explicitly set forth the terms of her loan, accompanied by an all-capital disclaimer about the possibility of negative amortization.  As explained under the Truth-in-Lending discussion, however, while the TILDS and good faith estimates may have complied with § 226.18, the disclosures when taken together could be misleading as to the interest rate since several of the documents stated that the interest rate was 1%.  Only the TILDS showed anything different.  Moreover, the terms changed between the time Plaintiff was given the preliminary disclosures and when she closed on her loan and she alleges that she was not given time to read the closing documents or a copy at the time of closing.  Thus, the Court is not prepared to say at this time that her reliance on the alleged statements was unreasonable.

Defendants also argue that Plaintiff's Complaint demonstrates that she knew that the 1% rate was not the rate of her loan because she refers to it as a teaser rate.  The Complaint, however, indicates that Plaintiff only discovered that the 1% rate was a "teaser rate" after closing and her use of that term in her Complaint is meant only to emphasize the alleged misrepresentation.

Defendants also argue that Plaintiff cannot prove that Defendants made any alleged misrepresentation because they did not perform the appraisal. Defendants are incorrect, however, because Plaintiff's allegation is that Defendants knew that the appraisal was incorrect and yet represented to Plaintiff that it was correct and in reliance on that statement, Plaintiff closed on the loan. Compl. ¶ 77.

Finally, Defendants contend that Plaintiff's fraud claim is barred because promissory statements as to future events cannot be the basis of fraud. Defendants fail to note, however, that fraud claims may be based on allegations that the promisor did not intend to keep its promise at the time that it made the promise. <u>Sass v. Andrew</u>, 832 A.2d 247, 264 (Md. Ct. Spec. App. 2003). Here Plaintiff alleges that, at the time Defendants promised her a loan of 1%, it had no intention of keeping its promise. Compl. ¶ 79.

Thus, the Court believes that dismissal is not warranted at this stage, particularly where, as here, Defendants have "been made aware of the particular circumstances for which [they] will have to prepare a defense at trial."

2.   Maryland Consumer Fraud and Deceptive Business Practices
     Act

Under Count IV, Plaintiff also claims that Defendants

violated the Maryland Consumer Fraud and Deceptive Business

Practices Act, Md Ann. Code, Com. Law § 13-101 et seq.[4]  In

particular, Plaintiff alleges that Defendants violated § 13-

301(9) of the Act, which prohibits

> "Deception, fraud, false pretense, false premise,
> misrepresentation, or knowing concealment,
> suppression, or omission of any material fact with the
> intent that a consumer rely on the same in connection
> with:
>
> (i) The promotion or sale of any consumer goods,
> consumer realty, or consumer service;
>
> (ii) A contract or other agreement for the evaluation,
> perfection, marketing, brokering or promotion of an
> invention; or
>
> (iii) The subsequent performance of a merchant with
> respect to an agreement of sale, lease, or rental[.]"

Defendant argues in a footnote that Rule 9(b)'s

particularity requirements also apply to such claims and that

Plaintiff has not pled this claim with sufficient particularity.

As already discussed, however, Plaintiff has pled her fraud

---

[4] Plaintiff's Complaint also references Arkansas' Deceptive Trade
Practices Act, Ark Code Ann. §§ 4-88-107 & 108, and Illinois'
Consumer Fraud and Deceptive Business Practices Act, 815 Ill.
Comp. Stat. 505.  It is unclear why Plaintiff includes these
statutes in her Complaint as she provides no explanation as to
how they would apply in this case.  To the extent that Plaintiff
means to raise these as additional claims, they will be
dismissed for a failure to allege sufficient facts to state a
claim.

allegations with sufficient particularity to survive a motion to dismiss and her allegations apply equally here.   Thus, Defendants' motion to dismiss as to the Plaintiff's claim that Defendants violated the Maryland Consumer Fraud and Deceptive Business Practices Act will also be denied.

**E.   Count V: Racketeer Influenced and Corrupt Organizations Act**

Plaintiff's fifth claim against Defendants is for a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).[5]   Essentially, Plaintiff appears to allege that the lender, Defendant AHMC, conducted a pattern of racketeering activity by 1) disseminating information to Plaintiff and other consumers via their website and through other marketing materials; and 2) disseminating misleading information to investors via their web site and in SEC filings to promote their

---

[5] It is unclear if Plaintiff's references within Count V to various Maryland and Federal statutes unrelated to her RICO claim are meant to be additional claims or if they are simply intended as factual allegations.   Plaintiff cites to and claims violations by Defendants of Maryland Finder's Fee Act, Md. Code Ann., Com. Law § 12-801 et seq., Federal prohibitions against unearned fees and fee splitting under 12 U.S.C. 2607(b) and 24 C.F.R. § 3500.14; Maryland prohibitions against mortgage brokers being a director, officer, or employee of any lender where he places a loan, Md. Code Ann., Com. Law § 12-803; and prohibitions against a mortgage broker charging a finder's fee in any transaction of the mortgage if the broker is the lender or an owner, part owner, partner, director, officer, or employee of the lender, Md. Code Ann., Com. Law § 12-804(e).   Other than the reference to RESPA as discussed in Note 3 above, to the extent that these allegations are intended to be additional claims, these claims will be dismissed for a failure to allege sufficient facts to state a claim.

revenue.  Compl. ¶¶ 104, 105.  It then paid an incentive to Defendant ABC, whom Plaintiff terms an "employee" of AHMC, for its efforts in securing Plaintiff's purchase of the more profitable loan by various techniques such as obtaining an inflated appraisal, and by selectively choosing which of Plaintiff's credit scores would be most useful.  Id. ¶¶ 107, 108, 111.  In addition, Plaintiff alleges that Defendant ABC also secured additional revenue for AHMC by requiring Plaintiff to use ABC and AHMC affiliated companies, such as their affiliated settlement company.  Id. ¶ 109.

RICO defines four types of prohibited conduct, but Plaintiff does not state which of the four types Defendants are alleged to have violated.  The four types of conduct prohibited under RICO are

[a]  the use of income derived from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce;

[b]  the acquisition or maintenance of any interest in an enterprise "through" a pattern of racketeering activity;

[c]  conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and

[d]  conspiring to violate any of these provisions.

Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 482 (1985)
(citing 18 U.S.C. § 1962).  Plaintiff appears to be alleging a
violation of 18 U.S.C. § 1962(c) which states "it shall be
unlawful for any person employed by or associated with any
enterprise engaged in, or the activities of which affect,
interstate or foreign commerce, to conduct or participate,
directly or indirectly, in the conduct of such enterprise's
affairs through a pattern of racketeering activity or collection
of an unlawful debt."  The facts alleged by Plaintiff fail to
state a RICO claim, however, and will be dismissed.

A violation of § 1962(c) requires the establishment of four
elements: (1) conduct (2) of an enterprise (3) through a pattern
(4) of racketeering activity.  Sedima, 473 U.S. at 496.
Defendant argues that Plaintiff does not state a RICO claim
because she has not alleged a RICO "enterprise."  "A RICO
'enterprise' is an ongoing formal or informal organization whose
associates function as a continuing unit."  Toucheque v. Price
Brothers Co., 5 F. Supp. 2d 341, 346 (D. Md. 1998) (citing
Palmetto State Med. Ctr. v. Operation Lifeline, 117 F.3d 142,
148 (4th Cir. 1997)).  Under § 1962(c), the RICO "enterprise"
cannot be the same as the 'person' alleged to have violated the
statute.  In other words, the defendant cannot be the same as

the "enterprise." _Id._ at 347 (citing <u>Operation Lifeline</u>, 117
F.3d at 148). "This distinction requirement stems from the
purpose of § 1962(c), which is designed solely to reach criminal
activity by employees while protecting the innocent corporate
enterprise from criminal infiltration." _Id._

Defendants argue, and this Court agrees, that Plaintiff's
Complaint does not identify the "enterprise." On the one hand,
it appears that Plaintiff alleges that the "lender" is the
enterprise and Defendants AHMC and ABC are the "persons"
associated with the enterprise that are conducting the
racketeering. Compl. ¶¶ 101-103. Later in her Complaint,
however, Plaintiff refers to AHMC as the lender and the
"employer" and to ABC as the "employee" with ABC generating
profit for AHMC via illicit means, but with AHMC also conducting
alleged predicate activity. _Id._ ¶ 108. Under this scenario, it
would appear that Plaintiff is alleging that AHMC is the
enterprise and ABC is the RICO "person." Yet ABC is a d/b/a of
AHMC and not a separate person. In any scenario, however,
Plaintiff has not alleged an "enterprise" separate from
Defendants. Thus, because Plaintiff has not adequately alleged
a RICO enterprise, nor does it appear that she could allege a
RICO enterprise separate from Defendants AHMC and ABC, she has

not sufficiently stated a RICO claim to survive a motion to dismiss.

**F.   Count VI, VIII, and XI:  Negligence and Breach of Fiduciary Duty**

Plaintiff alleges one count of negligence and two counts of breach of fiduciary duty.  As a preliminary matter, Maryland courts do not recognize a separate action for breach of fiduciary duty, but rather, the claim is to be found in another tort or contract claim.  Vinogradova v. Suntrust Bank, Inc., 875 A.2d 222, 231 (Md. Ct. Spec. App. 2005).  Both of Plaintiff's claims for breach of fiduciary duty are identical and thus will be treated as one claim.  Plaintiff alleges that Defendants AHMC and ABC had a special relationship to Plaintiff because she was guided by their judgment and advice and that she believed that they would act in her best interest.[6]   Compl. ¶¶ 135, 155.  As Plaintiff's claim relates to their duty toward Plaintiff, they will be considered in conjunction with her negligence claim.

Under Maryland law, in order to state a cause of action for negligence, Plaintiff must demonstrate a duty owed to her by Defendants.  Parker v. Columbia Bank, 604 A.2d 521, 531-32 (Md. Ct. Spec. App. 1992) (citing Jacques v. First Nat'l Bank, 515 A.2d 756, 758 (Md. 1986)).  Here Plaintiff alleges three duties

---

[6] Plaintiff also alleges fiduciary relationships by the appraiser and the title company, both of whom have been dismissed as parties.  Thus, claims as to those parties have been dismissed.

owed to Plaintiff by Defendants AHMC and ABC: 1) A duty of care in preparing the appraisal upon which the Defendants could foresee that the Plaintiff would rely; 2) a duty to disclose to "the consuming public" the foreseeable risks associated with the use of the loan product at issue here and to not market the loan product in such a way as to deceive consumers into taking them; and 3) the fiduciary duty discussed above requiring Defendants to act in her best interest.

Defendants correctly argue that it is a longstanding principle of Maryland law that the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between a debtor and a creditor and it is not fiduciary in nature. _Yousef v. Trustbank Sav., F.S.B._, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990). Exceptions may arise, however, where there are special circumstances. _Parker_, 604 A.2d at 532-33. Some cases state that "special circumstances 'may' exist where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and relying on the bank to counsel and inform him." _Id._ at 533 (internal citations omitted). The _Parker_ court analyzed the cases in which courts had indicated that a special "counseling" duty may arise and found that "even in those cases, courts generally refused to hold the bank liable to its customer." _Id._

Those courts reasoned "that a borrower cannot 'abandon all
caution and responsibility for his own protection and
unilaterally impose a fiduciary relationship on another without
a <u>conscious assumption</u> of such duties by the one sought to be
held to be liable as a fiduciary." <u>Id.</u> (internal citations
omitted) (emphasis in original).

Here, Plaintiff has not alleged any facts demonstrating
that the Defendants consciously assumed any special duties
toward Plaintiff beyond those of a normal lender/borrower
relationship.  Thus, her negligence and fiduciary duty claims
will be dismissed for failure to state a claim.

## G.   Count VII: Breach of Express Warranties

Plaintiff alleges in Count VII that ABC made express
warranties on which she relied when purchasing her loan.
Plaintiff alleges that ABC breached these express warranties and
that she suffered damages as a proximate result of the breach.
As a preliminary matter, Defendants argue that Plaintiff fails
to state a claim because she does not state what specifically
are the express warranties made by ABC, but simply avers
generally that Defendant ABC made express warranties via
advertisements, models and samples, and other similar uniform
representations without specifying which statements constituted
the express warranties.  In a breach of express warranty action,

"a plaintiff must set forth the terms and conditions of the warranty." <u>Pulte Home Corp. v. Parex, Inc.</u>, 923 A.2d 971, 996 (Md. Ct. Spec. App. 2007).  Here Plaintiff has not met this standard.

Regardless, even if Plaintiff had pleaded the claim with more specificity, Plaintiff's claim must fail because in Maryland, express warranties are governed statutorily by § 2-313 of the Commercial Law Article of the Maryland Code, which provides as follows:

§ 2-313.  Express warranties by affirmation, promise, description, sample

(1)  Express warranties by the seller are created as follows:

(a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)  Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c)  Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

A "good" is defined under Md. Code Ann., Com. Law § 2-105 (1) as "all things (including specially manufactured goods) which are movable at the time of identification to the contract

for sale other than the money in which the price is to be paid,
investment securities (Title 8) and things in action." Here,
Plaintiff is not buying a movable thing, but is contracting to
borrow money that is to be repaid with interest. Thus,
Plaintiff's mortgage does not qualify as a "good" under § 2-313
so Plaintiff cannot state a claim for breach of express
warranty. The claim will, therefore, be dismissed.

### H.   Count IX: Unjust Enrichment/Restitution

Plaintiff's ninth claim is for unjust enrichment. She
argues that as the mortgage contract was obtained via fraudulent
means, that Defendants have been unjustly enriched. As
Defendants argue, Maryland courts generally do not recognize a
cause of action for unjust enrichment where the relationship of
the parties is set out in a valid contract. County Com'rs of
Caroline County v. J. Roland Dashiell & Sons, Inc., 747 A.2d
600, 607 (Md. 2000). Courts recognize certain exceptions to
this rule, however, as in cases "when there is evidence of fraud
or bad faith, there has breach of contract or a mutual recission
of the contract, when rescission is warranted, or when the
express contract does not fully address a subject matter." Id.
at 608-09. Here, Plaintiff alleges fraud and breach of contract
sufficient to survive a motion to dismiss, thus the mortgage
note is not a bar to an unjust enrichment claim here.

To establish a claim for unjust enrichment in Maryland, the Plaintiff must allege three elements: 1) "a benefit conferred upon the defendant by the plaintiff;" 2) "an appreciation or knowledge by the defendant of the benefit;" and 3) "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." Id. at 607 n.7.  Here Plaintiff has alleged all three elements and the claim will not be dismissed at this point in the litigation.

## H.    Count X:  Breach of Contract

Plaintiff alleges in Count X a breach of the implied duty of good faith and fair dealing.  Defendants contend that Plaintiff's claim should be dismissed because it does not allege any breach of the express terms of the mortgage.  Maryland recognizes an implied duty of good faith and fair dealing in certain contracts, however.  Parker, 604 A.2d at 531.  "The duty simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract."  Id.

Plaintiff's allegations relating to the breach of the duty of good faith relate to events prior to closing on the mortgage. She has not alleged that Defendants have acted in such a way as to prevent Plaintiff from performing her obligations under the

mortgage note.  Thus, Plaintiff has failed to state a claim for breach of contract and Count X will be dismissed.

## J.  Count XII:     Duress and Economic Duress

Plaintiff's final count is for Duress and Economic Duress. Defendants rightly argue that Maryland does not have a damages claim for duress.  Rather, the remedy is to make the contract voidable where a plaintiff can establish that the plaintiff's assent to the agreement was forced or involuntary.  Blum v. Blum, 477 A.2d 289, 294 (Md. Ct. Spec. App. 1984).  Plaintiff's allegations relate to the fact that her loan contains "an illegal prepayment penalty," which prevents her from leaving the contract.  Plaintiff does not allege that Defendants forced her into the mortgage agreement or that her consent was involuntary. Thus, Plaintiff does not state a claim for duress or economic duress and Count XII will be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion will be granted in part and denied in part.  Plaintiff's claims for violation of the requirement that 12 C.F.R. § 226.18 disclosures be clear and conspicuous (partial Count I), for a violation of 12 C.F.R. § 226.20(c) as to timeliness of the post-closing disclosures (partial Count II), for violation of the Truth in Lending Act's Advertising provisions (Count III), for violation

of RICO (Count V), for negligence and breach of fiduciary duty

(Counts VI, VIII, and XI), for breach of contract (Count X), and

for duress and economic duress (Count XII) will be dismissed.[7]

Plaintiff's claims for rescission and her possibly intended

RESPA claim will also be dismissed, but without prejudice and

with leave to amend the Complaint within 30 days to properly

make those claims.[8]  Plaintiff will be permitted to proceed on

her claims for the timeliness of the § 226.18 Truth-in-Lending

disclosures and for violations of the 12 C.F.R. § 226.19(b)

variable rate disclosure requirements (partial Count I), for

violation of the disclosure requirements under 12 C.F.R. §

226.20(c)(5) (partial Count II), for fraud and deceptive acts

(Count IV), and for unjust enrichment (Count IX).  A separate

order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

December 3, 2009

---

[7] Any unenumerated claims, to the extent Plaintiff also intended
them as claims, other than RESPA, will also be dismissed.

[8] The Court notes, however, that by granting leave to amend on
the rescission and RESPA claims, it is not suggesting that
Plaintiff should amend her Complaint.  Rather the Court is
recognizing the liberal pleading standard accorded to pro se
plaintiffs and the desire to see no meritorious claim dismissed
on a technicality.  The Court suggests, however, that should
Plaintiff move to amend her Complaint that she should make every
attempt to be concise and, given the already voluminous
Complaint filed, it is unlikely that she would need more than an
additional five pages with which to properly allege these two
claims.